IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-57

 No. COA20-895

 Filed 1 February 2022

 Industrial Commission, No. 18-001070

 DARRYL RIMMER, Employee, Plaintiff,

 v.

 TOWN OF CHAPEL HILL, Employer, NORTH CAROLINA INTERLOCAL RISK
 MANAGEMENT AGENCY (NCIRMA), Administered by THE NORTH CAROLINA
 LEAGUE OF MUNICIPALITIES, Carrier; Defendants.

 Appeal by Plaintiff from opinion and award entered 10 September 2020 by the

 North Carolina Industrial Commission. Heard in the Court of Appeals 19 October

 2021.

 Patterson Harkavy LLP, by Christopher A. Brook, Henry N. Patterson, and
 Paul E. Smith, for Plaintiff-Appellant.

 Teague Campbell Dennis & Gorham, LLP, by Dayle A. Flammia and Lindsay
 A. Underwood, for Defendants-Appellees.

 Edelstein and Payne, by M. Travis Payne, for amicus curiae Professional Fire
 Fighters and Paramedics of North Carolina.

 The McGuinness Law Firm, by J. Michael McGuinness, for amici curiae North
 Carolina Police Benevolent Association and Southern States Police Benevolent
 Association.

 COLLINS, Judge.

¶1 Plaintiff Darryl Rimmer appeals from an Opinion and Award of the Industrial
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 Commission denying his claim for workers’ compensation benefits for his post-

 traumatic stress disorder (“PTSD”). Plaintiff argues that the Commission erred by

 concluding that his claim was barred by his failure to timely give notice of his PTSD

 to his employer and to timely file his claim. We reverse and remand for a

 determination of the merits of Plaintiff’s claim.

 I. Background

¶2 Plaintiff joined the Chapel Hill Fire Department (“CHFD”) as a firefighter on

 20 June 1995. Plaintiff first worked “as a member of a crew of three to five people”

 with “general fire fighting duties” and then as a “driver/operator.” In 2000, Plaintiff

 was promoted to the rank of captain and became responsible for overseeing “a crew,

 a truck, and a station.”

¶3 On 9 December 2002, Plaintiff was struck by falling debris while fighting a

 house fire and briefly lost consciousness. Following this incident, Plaintiff filed a

 workers’ compensation claim for injuries to his cervical spine and left shoulder. The

 claim was accepted as compensable. Plaintiff was entirely out of work from

 10 December 2002 through 31 March 2003, and then worked on light duty through

 17 July 2003. Plaintiff returned to full duty with no restrictions on 18 July 2003.

¶4 In either late 2003 or early 2004, Dr. Brian Benjamin, Plaintiff’s family doctor,

 referred Plaintiff for a neurocognitive evaluation due to “a one-year history of

 cognitive and behavioral changes following” the December 2002 incident.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 Neuropsychologist Dr. Kristine Herfkens evaluated Plaintiff on 6 January 2004. In

 her report, Dr. Herfkens noted that Plaintiff “complained of poor concentration and

 memory, difficulty learning new information, and a ‘spacey feeling.’ He particularly

 struggles with sustaining his attention on longer, slower tasks.” Dr. Herfkens also

 noted that,

 In the past, [Plaintiff] has had problems with work related
 depression and PTSD. He sought treatment, and improved
 considerably. He has been told that his cognitive problems
 may be related to mild depression, but he does not feel like
 he did in the past when he was depressed and anxious.

 Dr. Herfkens recorded that Plaintiff “reported a history of depression and PTSD

 related to events in his work as a firefighter.”

¶5 Dr. Herfkens concluded that it was “possible that [Plaintiff] has mild residual

 depressive and PTSD symptoms as a result of” the December 2002 incident. Her

 “diagnostic impressions” included “Post concussion syndrome, mild”; “Depression

 NOS”; and “Anxiety NOS.”1 After a follow-up appointment with Plaintiff on

 1 “NOS,” though not defined in the record, appears to be an abbreviation for “Not

 Otherwise Specified.” American Psychiatric Association, Diagnostic and Statistical Manual
 of Mental Disorders at 4 (4th ed. 2000). “NOS” was a category of diagnosis applicable where
 (1) “[t]he presentation conforms to the general guidelines for a mental disorder in the
 diagnostic class, but the symptomatic picture does not meet the criteria for any of the specific
 disorders”; (2) “[t]he presentation conforms to a symptom pattern that has not been included
 in the DSM-IV Classification but that causes clinically significant distress or impairment”;
 (3) “[t]here is uncertainty about etiology”; or (4) “[t]here is insufficient opportunity for
 complete data collection . . . or inconsistent or contradictory information, but there is enough
 information to place it within a particular diagnostic class.” Id.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 20 January 2004, Dr. Herfkens noted that Plaintiff “continues to be bothered by

 forgetfulness + fatigue.”

¶6 In notes dated 5 February 2004, Dr. Benjamin listed Plaintiff’s “Problem #1”

 as “Closed head injury.” Dr. Benjamin wrote:

 S: Mr. Rimmer still continues to suffer from the sequelae
 of the injuries he suffered on 12/9/02 . . . . He did lose
 consciousness, and suffered significant problems. Many of
 the physical problems have improved; however, he still is
 experiencing a post concussive syndrome with reduction in
 his cognitive function, and resultant post traumatic stress
 disorder symptoms of depression and anxiety. This was
 confirmed by neuropsychological testing done by Dr.
 H[e]rfkens. Please refer to her report, dated 1/6/04.
 ....

 A: Post concussive syndrome with resultant post traumatic
 stress disorder, anxiety disorder, and depression.

 P: He will continue to work with his environment, and
 enacting Dr. H[e]rfkens recommendations. We are going
 to start him on Effexor XR . . . and I will see him back in
 2-3 weeks.

 When asked if he recalled that “it was [Dr. Benjamin’s] assessment that [he was]

 suffering from Post-Concussive Syndrome, with resultant Post-Traumatic Stress

 Disorder, anxiety disorder, and depression,” Plaintiff responded, “If that’s in the

 notes – again, 2004 is a long time ago for me to remember, but I would say yes.”

¶7 In notes dated 4 March 2004, Dr. Benjamin listed Plaintiff’s “Problem #1” as

 “Depression, anxiety, and closed head injury.” Dr. Benjamin noted that Plaintiff was
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 experiencing “[m]ild anxiety and depression” but was “doing well,” “sleeping some

 better at nighttime,” and had an improved mood.

¶8 Plaintiff served as a captain with the CHFD until 2012, when he requested

 assignment as an assistant fire marshal. In this role, Plaintiff was required to

 conduct “fire inspections and investigations” and “report to active fires and other

 significant incidents like multiple vehicle car accidents or hazardous materials

 incidents.” Plaintiff’s duties at an active scene included “patrolling the scene,

 listening for radio traffic, and monitoring the structure for signs of fire extension,

 structural failure, or other hazards.”

¶9 In the spring of 2017, following a call involving two dogs burning in a fire,

 Plaintiff started vomiting “on almost a daily basis” when he arrived at work, opened

 the door of his vehicle, and smelled his gear. Plaintiff began suffering anxiety and

 panic attacks, particularly upon going into the town of Chapel Hill. Plaintiff also

 began experiencing intrusive thoughts of “victims of fires and accidents he had

 responded to over his years of service” and “nightmares which severely disrupted his

 sleep, limiting him to one to two hours of sleep per night.” Plaintiff’s intrusive

 thoughts and nightmares concerned calls spanning his career with the CHFD,

 including: Plaintiff’s participation in “salvage and overhaul operations” and the

 removal of victims’ bodies following a 1996 fire at the Phi Gamma Delta fraternity,

 response to a 1997 mobile home fire where Plaintiff found a father who had attempted
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 to shield his son, discovery of the body of a college student who died by suicide in

 1998, response to a victim who had fallen down an elevator shaft in either 1998 or

 1999, involvement in resuscitation efforts for an accident victim while the victim’s

 spouse “beat on [Plaintiff’s] chest and called [Plaintiff] an animal” sometime between

 2006 and 2008, discovery of an elderly decedent who had been severely neglected in

 approximately 2008, and participation in victim recovery efforts after a 2009

 explosion at the Garner ConAgra plant.

¶ 10 On 9 October 2017, “[a]fter approximately six months of emotional symptoms,”

 Plaintiff explained his difficulties to two of his superiors, Chief Matthew Sullivan and

 Fire Marshal Thomas Gregory. Sullivan and Gregory referred him to the Employee

 Assistance Program.

¶ 11 Plaintiff saw licensed professional counselor Mary Livingston Azoy through

 the Employee Assistance Program on 11 October 2017. Azoy wrote in her notes for

 this visit that Plaintiff had “developed severe PTSD as a result of cumulative trauma

 on the job,” with “[s]ymptoms worsening over last 6 months.” The notes, which

 spanned three visits and which Azoy did not sign until 2 March 2018, list Plaintiff’s

 diagnosis as PTSD. Azoy told Plaintiff at his first appointment that he “needed to

 seek the help of a psychiatrist[.]”

¶ 12 Plaintiff saw Dr. Hansen Su, a psychiatrist, for an evaluation on 30 October

 2017. In notes from this visit, Dr. Su wrote that Plaintiff had a “reported hx of PTSD,
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 related to his line of work as a firefighter.” Dr. Su noted that Plaintiff “[r]eports long

 hx of symptoms which have worsened in the past several months. More nightmares,

 flashbacks, distortions of perception, hyperarousal, memory loss, poor concentration.”

 Dr. Su’s notes also indicate “[n]o history of psychiatric issues.” Dr. Su testified that

 this information came from Plaintiff’s own self-reporting. Dr. Su’s notes reflect

 diagnoses of “Post-traumatic stress disorder, unspecified”; “Other depressive

 episodes”; and “Major depressive disorder, single episode, unspecified[.]” Plaintiff

 continued to see Dr. Su regularly.

¶ 13 Plaintiff began treatment with Gregory Allen, a licensed clinical social worker,

 on 7 November 2017. Allen’s notes from this visit list a diagnosis of “[p]ost-traumatic

 stress disorder, unspecified.” Allen wrote that Plaintiff “has been suffering with

 PTSD symptoms for several years now. About six months ago they became very bad

 again. . . . [Plaintiff] states he has been experiencing the problem(s) for 6 months.”

 Allen also wrote that Plaintiff had “PTSD: Diagnosed at age 35. Received Outpatient

 Treatment at age 35.” Allen indicated that Plaintiff has “a history of being treated

 for PTSD symptoms since 2002.” Allen explained these entries during his deposition:

 Q. And were you aware that as early as 2002, after a work
 comp injury, and from 2002 to 2004, during that time
 period, [Plaintiff] was diagnosed with depression and
 PTSD?

 A. Yeah.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 Q. How did you know that?

 A. He talked about it.

 ....

 Q. But you are aware that he was diagnosed with PTSD as
 early as early 2000s, weren’t you?

 A. Yeah. I would imagine that -- what he was going
 through, yeah.

 Plaintiff continued to see Allen regularly for outpatient therapy.

¶ 14 On 18 December 2017, Plaintiff requested his diagnosis and prognosis during

 an appointment with Dr. Su. On 22 December 2017, Plaintiff emailed Chief Sullivan

 and Human Resources Director Clifton Turner to inform them of his request from Dr.

 Su. In the email, Plaintiff wrote that Dr. Su had advised him that his “diagnosis was

 PTSD and [his] prognosis was very poor as to whether [he] would return to duty.”

 Plaintiff further wrote that Dr. Su “advised this illness is due to [his] career in the

 fire service and is related to [his] job.”

¶ 15 On 2 January 2018, Plaintiff filed a claim seeking workers’ compensation

 benefits for “[p]sychological disability diagnosed as Post-Traumatic Stress Disorder”

 caused by “traumatic exposures in [his] job as a firefighter” with the CHFD. After

 Defendants denied the claim, Plaintiff sought a hearing before the Industrial

 Commission.

¶ 16 Prior to the hearing, Defendants referred Plaintiff to Dr. Moira Artigues, a
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 general and forensic psychiatrist, who conducted an interview and examination with

 Plaintiff on 5 September 2018. Dr. Artigues gave her opinion that, to a reasonable

 degree of medical certainty, Plaintiff’s symptoms met the criteria for PTSD in the

 Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. Dr. Artigues

 noted that Plaintiff “said that he saw a psychiatrist or a psychologist for one to two

 appointments” after the 1996 fraternity fire and “recalled having nightmares at that

 time.” Dr. Artigues further noted that Plaintiff “said he eventually got over his

 symptoms through talking with coworkers” and “[b]etween 1996 and 2016, [Plaintiff]

 said he did not have much in the way of symptoms except for minor increases in his

 anxiety.” Dr. Artigues reviewed Plaintiff’s primary care records dating back to 2014

 and found that “[o]f note, there was no documentation of any psychiatric symptoms[.]”

 Upon reviewing Dr. Herfkens’ report, Dr. Artigues surmised that Plaintiff may have

 self-reported suffering from PTSD; Dr. Artigues could not determine “if a doctor

 actually diagnosed him with PTSD or if he [was] self-diagnosed[.]”

¶ 17 The Deputy Commissioner held a hearing and entered an Opinion and Award

 on 5 June 2019. The Deputy Commissioner found, contrary to Defendants’ assertion,

 that Plaintiff was not advised by a competent medical authority that he had PTSD in

 2004. Accordingly, the Deputy Commissioner concluded that Plaintiff’s claim was not

 barred by failure to timely give notice of his PTSD to Defendants, as required by N.C.

 Gen. Stat. § 97-22, or by failure to timely file his claim, as required by N.C. Gen. Stat.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 § 97-58(c). In the alternative, the Deputy Commissioner found that Plaintiff had

 shown a reasonable excuse for not having given written notice in 2004 and

 Defendants had not shown that they were prejudiced by any failure of notice. The

 Deputy Commissioner concluded that Plaintiff’s PTSD was a compensable

 occupational disease resulting from Plaintiff’s exposure to cumulative trauma in his

 job with the CHFD and awarded Plaintiff temporary total disability compensation,

 payment for treatment and counseling, and costs of the action.

¶ 18 Defendants appealed to the full Commission, which held a hearing and entered

 an Opinion and Award on 10 September 2020. The Commission concluded that

 Plaintiff failed to timely give notice of his PTSD to Defendants and failed to timely

 file his claim. The Commission also concluded that Plaintiff did not establish a

 reasonable excuse for the failure to timely notify Defendants, and Defendants were

 prejudiced by the late notice. The Commission denied Plaintiff’s claim. Plaintiff

 appealed to this Court.

 II. Discussion

¶ 19 Plaintiff argues that the Commission’s opinion and award denying his claim

 must be reversed because he timely gave Defendants notice of his PTSD diagnosis in

 2017 and timely filed his claim for compensation.

¶ 20 This Court’s review of an opinion and award of the Industrial Commission is

 generally “limited to consideration of whether competent evidence supports the
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

Commission’s findings of fact and whether the findings support the Commission’s

conclusions of law.” Richardson v. Maxim Healthcare/Allegis Grp., 362 N.C. 657,

660, 669 S.E.2d 582, 584 (2008) (citations omitted). Where the Commission’s

“findings of fact are not challenged and do not concern jurisdiction, they are binding

on appeal.” Medlin v. Weaver Cooke Const., LLC, 367 N.C. 414, 423, 760 S.E.2d 732,

738 (2014) (citing N.C. Gen. Stat. § 97-86). Jurisdictional findings of fact, however,

are “not conclusive on appeal, even if supported by competent evidence.” Perkins v.

Arkansas Trucking Servs., 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (citations

omitted). Instead, “‘[t]he reviewing court has the right, and the duty, to make its own

independent findings of such jurisdictional facts from its consideration of all the

evidence in the record.’” Id. (quoting Lucas v. Li’l Gen. Stores, 289 N.C. 212, 218, 221

S.E.2d 257, 261 (1976)).

 In performing our task to review the record de novo and
 make jurisdictional findings independent of those made by
 the Commission, we are necessarily charged with the duty
 to assess the credibility of the witnesses and the weight to
 be given to their testimony, using the same tests as would
 be employed by any fact-finder in a judicial or quasi-
 judicial proceeding.

Morales-Rodriguez v. Carolina Quality Exteriors, Inc., 205 N.C. App. 712, 715, 698

S.E.2d 91, 94 (2010). “This Court makes determinations concerning jurisdictional

facts based on the greater weight of the evidence.” Capps v. Se. Cable, 214 N.C. App.

225, 227, 715 S.E.2d 227, 229 (2011) (citation omitted). We review the Commission’s
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 conclusions of law de novo. Medlin, 367 N.C. at 423, 760 S.E.2d at 738.

¶ 21 An employee’s PTSD may be compensable as an occupational disease under

 the Workers’ Compensation Act if it is “proven to be due to causes and conditions

 which are characteristic of and peculiar to a particular trade, occupation or

 employment” and is not an “ordinary disease[] of life to which the general public is

 equally exposed outside of the employment.” N.C. Gen. Stat. § 97-53(13) (2020); see

 also Smith-Price v. Charter Pines Behav. Ctr., 160 N.C. App. 161, 171, 584 S.E.2d

 881, 888 (2003) (holding the employee’s PTSD fell within the statutory definition of

 occupational disease). Generally, no compensation for an occupational disease “shall

 be payable unless” the employee gives written notice to the employer within 30 days

 or “reasonable excuse is made to the satisfaction of the Industrial Commission for not

 giving such notice and the Commission is satisfied that the employer has not been

 prejudiced thereby.” See N.C. Gen. Stat. § 97-22 (2017) (requiring injured employees

 to give notice of accident); id. § 97-58(b) (2017) (providing that the notice requirement

 in section 97-22 is applicable “in all cases of occupational disease except in case[s] of

 asbestosis, silicosis, or lead poisoning”). The 30-day period in which an employee

 must give notice of an occupational disease runs “from the date that the employee

 has been advised by competent medical authority that he has the same.” Id.

 § 97-58(b).

¶ 22 An employee seeking compensation for an occupational disease must also file
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 a claim “with the Industrial Commission within two years after death, disability, or

 disablement as the case may be.” Id. § 97-58(c) (2017). Our Supreme Court has

 construed section 97-58 to provide that this two-year period

 begins running when an employee has suffered injury from
 an occupational disease which renders the employee
 incapable of earning the wages the employee was receiving
 at the time of the incapacity by such injury, and the
 employee is informed by competent medical authority of
 the nature and work related cause of the disease. The two
 year period for filing claims for an occupational disease
 does not begin to run until all of these factors exist.

 Dowdy v. Fieldcrest Mills, Inc., 308 N.C. 701, 706, 304 S.E.2d 215, 218-19 (1983). “An

 employee must be informed clearly, simply and directly that he has an occupational

 disease and that the illness is work-related” to trigger the two-year period. Lawson

 v. Cone Mills Corp., 68 N.C. App. 402, 410, 315 S.E.2d 103, 107 (1984) (citations

 omitted).

¶ 23 Because the two-year period for filing claims under section 97-58(c) “is a

 condition precedent with which a claimant must comply in order to confer jurisdiction

 on the Industrial Commission,” whether a plaintiff timely filed a claim is a

 “jurisdictional finding[] of fact fully reviewable by this Court.” Dowdy, 308 N.C. at

 704-05, 304 S.E.2d at 218; see also Rainey v. City of Charlotte, 247 N.C. App. 594, 595,

 785 S.E.2d 766, 768 (2016) (holding that the timely filing of an occupational disease

 claim under section 97-58(c) is “an issue of jurisdiction for the commission”);
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 Reinhardt v. Women’s Pavilion, Inc., 102 N.C. App. 83, 86, 401 S.E.2d 138, 140 (1991)

 (“[T]he timely filing of a claim for compensation is a condition precedent to the right

 to receive compensation and failure to file timely is a jurisdictional bar for the

 Industrial Commission.”).

¶ 24 We first determine when plaintiff was informed by competent medical

 authority of the nature and work-related cause of his PTSD. See Dowdy, 308 N.C. at

 710, 304 S.E.2d at 221; Rainey, 247 N.C. App. at 597, 785 S.E.2d at 768. Plaintiff

 first saw Azoy through the Employee Assistance Program on 11 October 2017; Azoy

 directed Plaintiff to seek treatment with a psychiatrist. Though Azoy’s notes reflect

 a diagnosis of PTSD, those notes were not signed until 2 March 2018, and there is no

 indication that Azoy communicated a diagnosis to Plaintiff.

¶ 25 Plaintiff began treatment with Dr. Su on 30 October 2017 and then with Allen

 on 7 November 2017. Plaintiff sought his diagnosis and prognosis from Dr. Su on 18

 December 2017 and four days later emailed Sullivan and Turner that Dr. Su’s

 “diagnosis was PTSD,” Plaintiff’s “prognosis was very poor as to whether [he] would

 return to duty,” and Plaintiff’s illness was “due to [his] career in the fire service and

 is related to [his] job.” The greater weight of the evidence shows that Plaintiff was

 not clearly, simply, and directly informed of the nature and work-related cause of his

 present PTSD by competent medical authority until 18 December 2017.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

¶ 26 Defendants argue that Plaintiff was informed by competent medical authority

 of the nature and work-related cause of his PTSD in or before 2004. This argument

 is without merit.

¶ 27 Defendants rely in significant part on the four records from Dr. Herfkens and

 Dr. Benjamin. Defendants contend that when Plaintiff “saw Dr. Herfkens in 2004”

 he “had a noted history of depression and PTSD, which [Dr. Herfkens] stated were

 diagnosed as a result of [Plaintiff’s] employment.” Defendants overstate the contents

 of Dr. Herfkens’ report and notes. In her 6 January 2004 report, Dr. Herfkens wrote

 only that it was “possible that [Plaintiff] has mild residual depressive and PTSD

 symptoms as a result of” the December 2002 incident. Dr. Herfkens’ “diagnostic

 impressions” did not include PTSD and her notes from Plaintiff’s 20 January 2004

 follow-up appointment did not mention PTSD. While Dr. Herfkens indicated that

 Plaintiff had “reported a history of depression and PTSD related to events in his work

 as a firefighter,” she neither wrote nor testified that she or another medical provider

 had diagnosed Plaintiff with PTSD.

¶ 28 Defendants’ own expert, Dr. Artigues, opined that Dr. Herfkens’ records may

 have reflected Plaintiff’s self-report of suffering from PTSD symptoms. Dr. Artigues

 testified that based on these records, she could not determine “if a doctor actually

 diagnosed him with PTSD or if he self-diagnosed[.]” Plaintiff’s own testimony

 suggests that he may have self-reported in the past; he explained that when he first
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 “open[ed] up” about his condition in 2017, he was self-reporting based on his

 understanding of PTSD, and he had used the term PTSD “for lack of better words.”

 Evidence indicating Plaintiff self-reported that he had PTSD symptoms or PTSD falls

 short of showing that Plaintiff was advised by competent medical authority that he

 had work-related PTSD. See Terrell v. Terminix Servs., 142 N.C. App. 305, 308, 542

 S.E.2d 332, 335 (2001) (the Workers’ Compensation Act “does not require an employee

 to diagnose himself or file a claim based on his own suspicions”).

¶ 29 Defendants also state that Dr. Benjamin “specifically diagnosed post-

 concussive syndrome with resultant PTSD, anxiety disorder, and depression in

 February 2004.” Dr. Benjamin’s 5 February 2004 notes include one line which states,

 “A: Post concussive syndrome with resultant post traumatic stress disorder, anxiety

 disorder, and depression.” However, Dr. Benjamin expressly noted that he had

 referred to and relied on the report in which Dr. Herfkens found only that it was

 “possible” that Plaintiff had residual depressive and PTSD “symptoms” as a result of

 the December 2002 incident. Additionally, the lack of reference to PTSD in Dr.

 Benjamin’s notes from a follow-up visit with Plaintiff just weeks later indicates that

 Dr. Benjamin had not in fact diagnosed Plaintiff with PTSD.

¶ 30 Dr. Benjamin’s 5 February 2004 notes otherwise state that Plaintiff suffered a

 “post concussive syndrome” with “symptoms” of PTSD. This too is insufficient to show

 that Plaintiff was advised by competent medical authority that he had work-related
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 PTSD in 2004. Instead, the evidence suggests that Plaintiff may have been informed

 that he was experiencing symptoms of PTSD in 2004 without a formal diagnosis of

 work-related PTSD. Dr. Artigues testified that “most of the time . . . people have

 some symptoms along the way, and then PTSD declares itself.” Dr. Artigues further

 explained that a person may initially have “subclinical PTSD” which presents “some

 symptoms of PTSD” but does not meet all the criteria for diagnosis.

¶ 31 Defendants also argue that Allen’s records and testimony demonstrate that

 Plaintiff was informed by competent medical authority of the nature and work-

 related cause of his PTSD in or before 2004. Allen’s notes from his assessment of

 Plaintiff state, “PTSD: Diagnosed at age 35. Received Outpatient Treatment at age

 35” under the heading “Psych & SA Dx – Past and Present.” But when asked to

 confirm that he was “aware that [Plaintiff] was diagnosed with PTSD as early as

 early 2000s,” Allen responded only, “Yeah. I would imagine that -- what he was going

 through[.]” Allen’s equivocal deposition testimony undercuts the assertion in his

 notes that Plaintiff was diagnosed with PTSD at age 35. Moreover, Allen did not

 identify any particular individual as a “competent medical authority” responsible for

 the purported early 2000s diagnosis of PTSD, or reveal the extent of information, if

 any, that Plaintiff was given concerning such a diagnosis. This evidence therefore

 fails to establish that by 2004, competent medical authority informed Plaintiff of the
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 nature and work-related cause of the trauma-related PTSD that he is now

 experiencing.

¶ 32 Defendants contend that “all of the traumatic events which [Plaintiff] points

 to, which he indicates caused his conditions and symptoms, took place well before

 [Plaintiff] moved to the administrative position of fire marshal” in 2012, “with the

 most recent cited event taking place in 2009[.]” Yet the record demonstrates that

 even after these dates, Plaintiff was still required to respond to “active fires and other

 significant incidents” and experienced further trauma which contributed to his

 condition. In particular, Plaintiff identified the spring of 2017 fire which killed two

 dogs as precipitating some of his symptoms:

 [I]t was the smell that I remember. It’s burnt hair, burnt
 flesh. I was proud that day because I sat and watched our
 Fire Fighters bury those – that family’s animals in their
 yard. . . . But that smell, it stayed . . . . And it was shortly
 after that that I opened my car door one day and the smell
 hit me and I vomited in the woods behind my car.

 More fundamentally, the date of Plaintiff’s last exposure to traumatic events is

 immaterial. The inquiry under sections 97-22 and 97-58(c) is not the date of the

 employee’s last exposure to a harmful stimulus, but the date of death, disability, or

 disablement and the date the employee was informed of the nature of his disease and

 its work-related cause by competent medical authority. Dowdy, 308 N.C. at 706, 304

 S.E.2d at 218-19.
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

¶ 33 Even assuming for the sake of argument that Plaintiff was diagnosed with

 PTSD in or before 2004, sections 97-22 and 97-58(c) would not operate to bar his

 claim. The record demonstrates that the PTSD for which Plaintiff now seeks

 compensation is distinct in cause, more severe in nature, and remote in time from

 any PTSD he may have suffered in or before 2004. As Plaintiff argues, the medical

 consensus is that his cumulative exposure to trauma throughout his employment

 with the CHFD was a significant contributing factor to his current PTSD. By

 contrast, Plaintiff’s medical records indicate that many of the symptoms he was

 experiencing in the early 2000s were secondary to, and attributable to, his 2002

 injury.

¶ 34 Additionally, the symptoms Plaintiff began suffering in 2017 differ from his

 previous symptoms in their nature and severity. Plaintiff testified that he began

 experiencing some of the more debilitating symptoms in the spring of 2017 and had

 “never been at the point I’m at right now.” Plaintiff explained that he had been able

 to work through some of the traumatic situations he had faced in the past and did not

 recall missing work due to depression or other psychological conditions, prior to

 October 2017. Plaintiff also indicated that the severity of his sleep issues was new.

 Plaintiff’s wife testified that “she had been married to Plaintiff for thirty-one years,

 and had not seen him exhibit his current symptoms before 2017.”
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

¶ 35 Lastly, the evidence shows that more than a decade passed between Plaintiff’s

 symptoms in 2002 to 2004 and his current symptoms. On 4 March 2004, Dr.

 Benjamin noted that Plaintiff was “doing much better” and had “noticed a difference

 as ha[d] his wife and co-workers.” As the Commission found, Plaintiff did not miss

 any more work due to any alleged work-related condition between his July 2003

 return to full duty and October 2017, and there is no “evidence that Plaintiff received

 any treatment for any neurocognitive or emotional symptoms between March 2004

 and October 2017.” Daniel Jones, chief of the CHFD from the time Plaintiff was hired

 until 2015, “was not aware of any time Plaintiff had to miss work due to emotional or

 psychological symptoms[.]”

¶ 36 The greater weight of the evidence shows that Plaintiff was not clearly, simply,

 and directly informed of the nature and work-related cause of his present PTSD until

 18 December 2017.2 Because Plaintiff filed his claim on 2 January 2018, the

 2 Because Plaintiff was not advised by competent medical authority of the nature and
 work-related cause of his PTSD until December 2017, the two-year filing period could not
 begin to run until that time. See Dowdy, 308 N.C. at 706, 304 S.E.2d at 218-19 (“The two
 year period for filing claims for an occupational disease does not begin to run until” the
 employee is disabled by an occupational disease and is informed by competent medical
 authority of the nature and work related cause of the disease). Accordingly, we need not
 determine precisely when Plaintiff became disabled by his condition. Cf. Rutledge v. Stroh
 Companies, 105 N.C. App. 307, 311, 412 S.E.2d 901, 904 (1992) (finding it unnecessary to
 address the “date on which plaintiff was informed by competent medical authority of the
 nature and work-related cause of his disease” because plaintiff filed his claim within two
 years of becoming disabled); Underwood v. Cone Mills Corp., 78 N.C. App. 155, 158, 336
 S.E.2d 634, 637 (1985) (same).
 RIMMER V. TOWN OF CHAPEL HILL

 2022-NCCOA-57

 Opinion of the Court

 Commission erred by concluding that Plaintiff failed to timely file his claim within

 the two-year period provided by section 97-58(c). Additionally, because Plaintiff gave

 notice of his diagnosis and prognosis to Sullivan and Turner on 22 December 2017,

 the Commission erred by concluding that Plaintiff failed to comply with the 30-day

 notice requirement in section 97-22. We reverse the Commission’s opinion denying

 Plaintiff’s claim and remand for a determination of the merits of Plaintiff’s claim. See

 Rutledge, 105 N.C. App. at 311, 412 S.E.2d at 904 (reversing the Commission’s

 determination of lack of jurisdiction due to noncompliance with section 97-58(c) and

 remanding to the Commission for consideration of plaintiff’s claim).

 III. Conclusion

¶ 37 The greater weight of the evidence demonstrates that Plaintiff was not

 informed of the nature and work-related cause of his current PTSD by competent

 medical authority until 18 December 2017. Because Plaintiff notified his employer

 of his condition on 22 December 2017 and filed his claim on 2 January 2018, the

 Commission erred by concluding that his claim was barred by sections 97-22 and

 97-58(c). We reverse the Commission’s opinion and award denying Plaintiff’s claim

 and remand for a determination of the merits of Plaintiff’s claim.

 REVERSED AND REMANDED.

 Judges ZACHARY and ARROWOOD concur.